**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2898-19

IN THE MATTER OF THE
ESTATE OF AUGUSTIN
NGWE MANDENG.

_____

Argued January 27, 2022 – Decided February 4, 2022

Before Judges Alvarez, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-0192-2006.

Anthony Scordo argued the cause for appellant Tebeyene Mamo (Lento Law Group, attorneys; Anthony Scordo, on the brief).

Jeffrey T. Kampf argued the cause for respondent Estate of Augustin Ngwe Mandeng (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Jeffrey T. Kampf, of counsel and on the brief).

PER CURIAM

Plaintiff Tebeyene Mamo appeals from a February 26, 2020 order dismissing her claims against defendant, the estate of Augustin Ngwe Mandeng and its administratrix Elizabeth Mandeng, with prejudice. We affirm.

We set forth the factual and procedural history in two prior appeals. In re Est. of Mandeng (Mandeng I), No. A-2143-07 (App. Div. Feb. 24, 2009) and Mamo v. Est. of Mandeng (Mandeng II), No. A-2577-13 (App. Div. Apr. 16, 2015). Augustin[1] was formerly employed at the United Nations (UN). Mandeng I, slip op. at 3. Plaintiff alleged she was his legal wife; however, Augustin was legally married to Elizabeth at the time he purportedly married plaintiff. Id. at 3-6. After Augustin's death, Elizabeth was paid widow's benefits from his UN pension. Id. at 5.

In Mandeng I we affirmed the Probate Part's declaration that Elizabeth, not plaintiff, was Augustin's lawful surviving spouse. Id. at 9. However, plaintiff was not foreclosed from pursuing equitable relief in the Family Part on grounds of implied contract. Id. at 12 n.1. In due course, plaintiff filed a palimony complaint, which was dismissed because the Family Part judge was persuaded any judgment entered would be an advisory opinion because the estate lacked sufficient assets to satisfy the judgment. Mandeng II, slip op. at 8-9. In Mandeng II, we vacated and remanded the order and directed the judge to hear the matter on the merits. Id. at 14.

---

[1] We utilize Augustin and Elizabeth's first names because they share a common surname. We intend no disrespect.

A-2898-19

Ultimately, the Family Part judge found plaintiff was entitled to palimony and granted her a judgment totaling $238,220.59. Plaintiff served the judgment on the UN Joint Staff Pension Fund and requested satisfaction of the judgment by having the fund recognize her as the surviving spouse, thereby directing the pension funds to her. The fund denied the request, noting Elizabeth was independently entitled to the benefit as Augustin's widow. The fund cited Article 34 of its regulations:

> A widow's benefit shall . . . be payable to the surviving female spouse of a participant who was entitled to a retirement . . . at the date of his death, . . . if he was separated prior to his death, she was married to him at the date of separation and remained married to him until his death.

Plaintiff filed a second complaint and order to show cause in the Probate Part seeking an accounting from the estate; removing Elizabeth as administratrix; holding Elizabeth personally liable for "defalcations from the [e]state . . . for breach of her fiduciary duties as administratrix", and ordering the estate to satisfy the palimony judgment and pay counsel fees. The parties entered a consent order in lieu of a subpoena for discovery from the fund.

An attorney representing plaintiff vis-à-vis the fund, served the consent order on the fund, and according to the record requested "'an audit of the residual

A-2898-19

[settlement]'[2] . . . including the 'date of the complete depletion of the residual benefit.'" The fund denied the request for discovery noting it "enjoy[ed] the same privileges and immunities as the [UN], and [was] not subject to the jurisdiction of [the Probate Part]." Notwithstanding its sovereign immunity, the fund explained that pursuant to its regulations, "a residual settlement is payable 'if, upon the death of a participant . . . the total amount of the benefits paid to and on account of the participant is less than the participant's own contributions.'" It further explained that, upon retirement, Augustin elected to receive one-third of his pension benefit early in a lump sum, Elizabeth was being paid a widow's benefit, and no further funds or pension benefits remained payable.

The trial judge held a hearing, at which the parties stipulated the evidence into the record. Plaintiff argued all the funds paid to Elizabeth belonged to the estate and should be used to satisfy the palimony judgment. Plaintiff asserted Elizabeth never established an estate account and instead deposited the funds into her personal account violating her role as administratrix; therefore, Elizabeth was personally liable to satisfy the palimony judgment.

---

2 The residual benefit is separate from the widow's benefit and governed by Article 38 of the fund's regulations.

A-2898-19

The judge made oral findings and recounted the history of the case and the evidence. He concluded the evidence showed funds paid to Elizabeth constituted "a widow's benefit and these benefits were not payable [to the estate] as a residual benefit or residual settlement . . . [because] the residual settlement is only payable if upon the death of a participant, the total amount of benefits paid is less than the participant's contribution[s]." The judge noted Augustin contributed over $191,000 and received a lump sum payout of $399,000.

Further, he concluded the funds paid to Elizabeth belonged to her because

> [t]he [UN] widow's benefit unlike the residual settlement . . . is specifically not payable to a . . . beneficiary designated by the participant but to the participant's surviving female spouse and clearly in the probate court, in the appellate court[,] and in the [UN] administrative agency hearing and decisions the widow here was determined to be [Elizabeth.]

The judge also rejected plaintiff's claims on grounds of comity, noting the UN "as a foreign state, has [its] own set of rules and regulations with respect to the benefits that will be paid to its employees and designates how those benefits will be paid . . . . "

Plaintiff cited <u>Vasconi v. Guardian Life Insurance Co.</u>, 124 N.J. 338 (1991), and argued the judge could fashion an equitable remedy by requiring Elizabeth to return the funds she received to the estate to satisfy the judgment.

5

However, the judge found <u>Vasconi</u> distinguishable, noting the case involved a divorce proceeding in which a deceased spouse's estate sought to recover life insurance proceeds improperly paid to the former spouse where the parties had entered a property settlement agreement and relinquished all claims to each other's property. The judge noted here, Augustin and Elizabeth were not divorced, had no agreement relinquishing their claims, and Augustin had no power to change the beneficiary designation on his pension because "[t]he only power he had to make that change was to effectively and legally divorce [Elizabeth,] which he never did."

The judge concluded Elizabeth "has properly been receiving payments pursuant to the [fund's] ruling and finding and application of the rules and regulations in the UN." He entered an order dismissing plaintiff's complaint.

Plaintiff raises the following points on appeal:

> I. THE LOWER COURT ABUSED ITS DISCRETION AND ABDICATED ITS RESPONSIBILITIES BY REFUSING PLAINTIFF EQUITABLE RELIEF IN THE FORM OF A SURCHARGE AGAINST THE ADMINISTRATRIX AT LEAST IN THE AMOUNT OF PLAINTIFF'S PALIMONY JUDGMENT AGAINST THE DECEDENT'S ESTATE.
>
> > A. The evolving public policy of this state, as implemented by statute and common law, is to honor the intent of the decedent with respect to

6

A-2898-19

the distribution of non-probate assets, including employer pension plans. As such, a court of equity's duty is to ascertain that intent where the formalities of designating beneficiaries may not have been followed to the letter. This duty was not fulfilled here.

B.    The lower court reversibly erred by relying solely on the lack of a divorce decree in ascertaining decedent's intent thereby (1) violating the law of the case doctrine completely ignoring the factual findings and legal judgment of the same-level Family [Part], and (2) ignoring other facts presented by plaintiff including decedent's designation of plaintiff as recipient of a residual settlement, later claimed by the [f]und [to] have been exhausted prior to decedent's death.

C.    Extraordinary circumstances existed requiring the lower court to grant equitable relief to plaintiff, given the lack of fairness and lack of reviewability of the [f]und or the UN Appeals Tribunals' proclamations, which are (a) not subject to federal or state oversight, and (b) not entitled to international comity considerations.

D.    The proper remedy rendered below should have been a surcharge by the [e]state against the defendant [a]dministratrix in the amount of the palimony judgment.

Findings of fact by a judge sitting without a jury will not be disturbed on appeal unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests

7                                                    A-2898-19

of justice[.]" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011) (alteration in original) (quoting In re Tr. Created by Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)). The judge's findings are binding on appeal if "supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, an appellate court owes no deference to a trial judge's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Having considered plaintiff's arguments pursuant to these principles, we affirm substantially for the reasons expressed by the trial judge. We add the following comments to further address plaintiff's claims that the judge should have crafted an equitable remedy, and that he improperly relied on comity and deferred to the fund's rules rather than satisfy the palimony judgment from the pension.

"In the event that a court finds unjust enrichment, it may impose a constructive trust." Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016). The court must find "that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship,

which has resulted in a transfer of property." Id. at 288-89 (quoting D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968)).

In Seavey v. Long, the decedent participated in the Police and Fireman's Retirement System (PFRS). 303 N.J. Super. 153, 155 (App. Div. 1997). He had been supporting the plaintiff, his former spouse, pursuant to the terms of the parties' divorce agreement. Ibid. He later remarried, and after his death, the trial court imposed a constructive trust on defendant's widow's benefit paid by PFRS to continue satisfying the decedent's obligations to the plaintiff because she was disabled and "needy." Id. at 155-57.

We reversed and held as follows:

> While a court of equity is indeed empowered to achieve substantial justice between the parties and to be innovative in effecting this result, there is an additional principle that "equity follows the law," although this maxim is not slavishly followed. . . . [T]hat doctrine must yield if extraordinary circumstances or "countervailing equities" call for relief. . . . Because contractual and property rights of the parties are not to be infringed upon without an appropriate basis in either law or equity, we must examine whether defendant's pension benefits were correctly taken from her by the trial judge.
>
> [Id. at 156 (citations and internal quotations omitted).]

We concluded the trial judge had taken the defendant's property by "impos[ing] an obligation on [her] to share her statutory widow's benefits and

A-2898-19

to support the first wife" where defendant was not the wrongdoer. Id. at 157. There was "no authority for the court to accomplish this end. The court cannot merely designate the pension as subject of a constructive trust and provide for the first wife." Id. at 157-58. We reached the same conclusion in a different context, rejecting the imposition of an equitable remedy against a veteran's disability pension to satisfy his obligations to a former spouse because federal law preempted the States from treating the pension as marital property. Fattore v. Fattore, 458 N.J. Super. 75, 84-86 (App. Div. 2019).

Here, the record is devoid of wrongdoing by Elizabeth as administratrix to justify the imposition of a constructive trust. Therefore, plaintiff's ability to satisfy the judgment was limited to claims made against Augustin's estate, which no longer had assets. Elizabeth's widow's benefits were not an asset of the estate, but rather her separate property as Augustin's legal spouse. For these reasons, the trial judge did not err in declining to employ an equitable remedy because doing so would usurp Elizabeth's lawful rights.

International comity "is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other." O.N.E. Shipping, Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449, 451 n.3 (2d Cir. 1987) (quoting Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)). Rather, it is "the

recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons falling under the protection of its laws." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 160 (3d Cir. 2001) (quoting Hilton, 159 U.S. at 164).

In Shamsee v. Shamsee, the Supreme Court of New York, Appellate Division, denied a wife's claim to sequester funds from her husband's UN pension to satisfy a state court judgment and reversed the trial court's ruling holding UN officials in contempt for failing to comply with its sequestration orders. 428 N.Y.S.2d 33, 36 (N.Y. App. Div. 1980). The appellate court stated:

> [T]he pension fund is an organ of the [UN], subject to regulation by the General Assembly, and . . . its assets, although held separately from other [UN] property, are the property of that international organization. The funds which [the wife] seeks to sequester, therefore, are impervious to legal process under both section 2 of the convention[3] and section 288a of title 22 of the United States Code (the International Organizations Immunities Act).

---

[3] The Convention on Privileges and Immunities of the United Nations, Art. II, §2, Feb. 13, 1946, 21 U. S. T. 1422, T. I. A. S. No. 6900, establishes the UN's immunity from legal process, and states: "The [UN] shall make provisions for appropriate modes of settlement of: (a) Disputes arising out of contracts or other disputes of a private law character to which the [UN] is a party. . . ." This treaty was acceded to by the United States on April 29, 1970. See Shamsee, 428 N.Y.S.2d at 35.

A-2898-19

[Ibid.]

The federal statute cited in Shamsee reads as follows:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

[22 U.S.C. § 288a(b).]

Immunity issues aside, the UN enjoys foreign sovereign status. For these reasons, the trial judge did not err by applying the doctrine of comity and upholding the fund's decision to deny plaintiff the widow's benefit or attachment of the benefit to satisfy the palimony award.

Moreover, a thorough review of the judge's findings reveals his ruling was also based on an independent review of the fund's provisions. The judge's conclusions that, pursuant to the fund's rules, there were no remaining funds available for payment of the residual settlement to plaintiff and she did not qualify as a widow are unassailable. Finally, to the extent we have not addressed an argument raised by plaintiff, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-2898-19